**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KENNETH KITSON, Individually and on Behalf of Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CIVIL NO. 08-507-GPM ) |
| BANK OF EDWARDSVILLE and HARLAND FINANCIAL SOLUTIONS, INC., | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This is the second time this Court has seen this case. It previously was removed under civil case number 06-528-GPM, which resulted in a remand to state court. In a thorough Memorandum and Order dated November 22, 2006, the Court found that the local controversy and home-state exceptions to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) (CAFA) applied, requiring abstention by the federal court.[1] After the case was remanded, Plaintiff voluntarily dismissed Defendant Harland Financial Solutions, Inc. (HFS) and was in the process of settling the matter with the remaining Defendant, The Bank of Edwardsville (BOE). Plaintiff and BOE had obtained preliminary approval of the settlement in state court when Plaintiff moved to amend the complaint to assert two claims against HFS – specifically,

---

[1] The facts and history of the case preceding the first removal are detailed in the Court's previous order and need not be recited here. The Court will only describe what has happened since the case was remanded.

seeking "leave to join an additional party defendant, by adding two additional Counts to the pleading." The motion was granted, and upon being served with the amended complaint, HFS re-removed the action to federal court under CAFA. Plaintiff concedes that because he no longer makes only a derivative claim against HFS, the home-state exception no longer applies. He moves to remand nonetheless, claiming that (1) HFS's removal was untimely and (2) the local controversy exception still applies. Plaintiff's motion to remand is fully briefed. Because of the Court's familiarity with this case and the issues involved, a hearing is not necessary.

After this action was remanded to state court, Plaintiff voluntarily dismissed without prejudice his state court claim against HFS on June 12, 2007. The action remained pending against BOE. On May 28, 2008, Plaintiff filed a "Motion for Leave to Add Additional Party Defendant," in which he sought to add two claims alleged as Counts VI and VII against HFS. The proposed complaint was attached to the motion. That motion was granted on June 4, 2008; the amended complaint was filed on June 16, 2008; and HFS was served with the amended complaint on June 20, 2008. HFS filed its notice of removal on July 16, 2008. In the meantime, in state court, Plaintiff and BOE jointly moved for preliminary approval of their settlement agreement on June 23rd, which the state court granted on June 30, 2008.[2]

HFS argues that removal is proper under CAFA. In fact, this Court already found that CAFA's basic jurisdictional requirements of minimal diversity and amount in controversy are met, and the new allegations do not alter this finding in any way; CAFA's applicability is undisputed.

---

[2]In 2003, the state court certified as the Class persons who: Borrowed money from the Bank [of Edwardsville] and signed a Promissory Note stating that interest was set per cent "per annum" but the Bank, any time after June 1, 1998 to present, used the 365/360 method to calculate interest on the Note.

The issues to be addressed are raised in Plaintiff's motion to remand – first, the timeliness of removal and second, whether the new allegations take this case outside of the local controversy exception to CAFA. This argument requires a look at the new allegations.

The new claim, asserted in Count VII, adds little to Count VI, which was asserted in the version of the complaint that the Court reviewed in granting Plaintiff's motion to remand in 2006.[3] Other than asserting a direct claim rather than merely a derivative claim against HFS, Count VII incorporates almost all of the allegations of Count VI, including the same class definition and the same factual allegations regarding BOE's conduct. Therefore, much of this Court's previous analysis regarding the local controversy exception holds.

As an initial matter, the notice of removal was timely filed, and the Court will not dwell on this issue. Plaintiff bears the burden of establishing the local controversy exception. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681-82 (7th Cir. 2006). Because the class definition has not changed, this Court's finding that Plaintiff has satisfied § 1332(d)(4)(A)(i)(I) holds. Furthermore, the Court rejects HFS's argument that BOE no longer satisfies § 1332(d)(4)(A)(i)(II)(aa), (bb) because BOE and Plaintiff have reached a settlement agreement. Significant relief is sought from BOE, and BOE's alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class. The settlement agreement does not change the Court's prior findings in this regard; the state court's preliminary approval of the settlement was just that – preliminary – and the cases cited by HFS are not persuasive on this issue, as they do not deal

---

[3] In Count VI, Plaintiff alleges that HFS breached its duty not to act in concert with BOE to cause harm to the Class and that HFS assisted and encouraged BOE in BOE's wrongful conduct. In its remand order, the Court characterized this as an aiding and abetting claim and questioned whether such claim could succeed under Illinois law.

with class action settlements at all. The principal injury requirement is satisfied as well. Contrary to HFS's assertion, the class definition has not changed. Therefore, the principal injuries were incurred in Illinois.

The final element is one on which the Court cannot defer to its previous findings. In order for the Court to abstain under the local controversy exception, the Court must find that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). In the initial remand papers, HFS cited state law for the proposition that a new action has been commenced, and Plaintiff failed to address this argument at all. Consequently, this Court ordered the parties to file supplemental briefing addressing this issue. The parties have done so, and this Court is convinced that the statute is clear and the case must remain in federal court.

Plaintiff relies on CAFA's post-enactment legislative history to support his argument that subpart (ii) is not meant to bar this scenario but, rather, competing cases proceeding in state court. He concedes that he is relying on the same Senate Judiciary Committee Report that this Court found "problematical" in its 2006 remand order. In its brief, BOE similarly tries to draw the distinction that "other actions" are only those filed with, apparently, separate case numbers. HFS again cites state law for what is a newly commenced action.

Federal judges are "textualists." Legislative history cannot defeat the plain meaning of a statute. *See Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light

on the enacting Legislature's understanding of otherwise ambiguous terms. … [L]egislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'"). The court's task in applying the terms of a statute to the facts of a case was recently typified in *Riegel v. Medtronic, Inc.*, 128 S. Ct. 999 (2008). In that case, the Supreme Court examined the pre-emption clause to the Medical Device Amendments to the Food, Drug, and Cosmetic Act and held that it barred common-law claims challenging the safety or effectiveness of a medical device marketed in a form that received premarket approval from the Food and Drug Administration. Writing for the Court, Justice Scalia stated:

> The dissent would narrow the pre-emptive scope of the term "requirement" on the grounds that it is "difficult to believe that Congress would, without comment, remove all means of judicial recourse" for consumers injured by FDA-approved devices. But, as we have explained, this is exactly what a pre-emption clause for medical devices does by its terms. The operation of a law enacted by Congress need not be seconded by a committee report on pain of judicial nullification. It is not our job to speculate upon Congressional motives. If we were to do so, however, the only indication available – the text of the statute – suggests that the solicitude for those injured by FDA-approved devices, which the dissent finds controlling, was overcome in Congress's estimation by solicitude for those who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States to all innovations.

*Id*. at 1008-09 (internal citations and footnote omitted).

Likewise, in applying CAFA itself, the Seventh Circuit Court of Appeals adopted a textualist approach in *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008). In *Spivey*, the Court examined the time frame to petition for appellate review of remand decisions under 28 U.S.C. § 1453(c)(1). The Court rejected the argument that the statute cannot mean what it says, stating that "legislative history can not justify reading a statute to mean the opposite of what it says. Legislative history may help disambiguate a cloudy text by showing how words work in context; it does not permit a judge to turn

a clear text on its head." 528 F.3d at 985. The Court explained that Congress writing a "deadline imprecisely, or even perversely, is not a sufficient reason to disregard the enacted language." *Id*. at 984.

Subpart (ii) of the local controversy exception is clear, and the result is the same under state and federal law. Where a plaintiff voluntarily dismisses his case and then refiles it within one year under 735 ILCS 5/13-217, he commences a new action under Illinois law. *See Wilson v. Brant*, 869 N.E.2d 818, 823 (Ill. App. Ct. 2007) (rejecting the argument that such filing is a "re-commencement" of the action). Similarly, in examining when a new action is commenced, rendering a case removable under CAFA, the Seventh Circuit Court of Appeals has held that "a novel claim tacked on to an existing case commences new litigation for purposes of the Class Action Fairness Act." *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 757 (7th Cir. 2006) (*Knudsen II*) (finding that the addition of new claims, by expanding the class definition, after February 18, 2005, meant that litigation was commenced within CAFA's coverage period). Plaintiff not only commenced a new action in filing the amended complaint, but within the amended complaint he asserted an entirely new claim against HFS. It seems axiomatic that the filing of the amended complaint commenced a new action – that is what triggered HFS's filing of the notice of removal in the first instance. This is not a close case.

It is remarkable that this case is here. The claims against HFS could have been filed in a separate case and the now scuttled settlement pushed through to fruition in state court. It is obvious that the state court judge made a major effort to get this case to this point. But now things must start from scratch and what seemed sure is now problematic. The approval process here is more difficult, time-consuming, and expensive. But, CAFA is written for judges and lawyers and properly

understood is a manual on how to invoke or avoid federal jurisdiction. It is required reading for all who engage in class-action litigation.

For the foregoing reasons, Plaintiff's motion to remand (Doc. 4) is **DENIED**. This matter is set for status conference on **Monday, November 24, 2008, at 9:00 a.m.** in the United States Courthouse in **BENTON, Illinois**. No further notice will be given.

**IT IS SO ORDERED.**

DATED: 10/21/08

s/ G. Patrick Murphy  
G. Patrick Murphy  
United States District Judge