IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| KENNETH KITSON, individually and on behalf of others similarly situated,         )<br>)<br>Plaintiffs,         )<br>)<br>v.         )<br>)<br>THE BANK OF EDWARDSVILLE,         )<br>)<br>Defendant.         )<br>) | Case No. 08-507-GPM |

**DEFENDANT BANK OF EDWARDSVILLE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Defendant The Bank of Edwardsville (the "Bank") respectfully requests this Court's final approval of the proposed (and preliminarily-approved) settlement of the above-captioned class action lawsuit. The settlement was negotiated at arms-length and in good faith between experienced class action counsel after many years of intensive litigation and negotiation. It creates a Common Fund in favor of the Class worth over 122% of the actual damages alleged by Plaintiffs, and Settlement Class members automatically receive their share of these proceeds without undergoing any claims process or having to take any affirmative action. The settlement is a fair, reasonable, and adequate resolution of the litigation and the claims of the Settlement Class. Indeed, no class member (or any other person) has asserted any objection to the proposed settlement, further confirming its fairness. Accordingly, this Court should grant final approval of the settlement so that settlement payments can be distributed to the Settlement Class, and the parties can put this litigation behind them.

## II. FACTUAL BACKGROUND

This action was originally filed in November 2002 in the Circuit Court of St. Clair County, Illinois (the "State Court"). Following Plaintiffs' joinder of a new party defendant, Harland Financial Solutions, Inc. ("HFS") in June 2008, HFS removed the present suit to this Court on July 16, 2008. (Doc. No. 2). This Court thereafter denied Plaintiffs' motion to remand on October 21, 2008. (Doc. No. 19).

The essence of Plaintiffs' Complaint is that from June 1, 1998 through March 2, 2008 ("the Class Period"), the Bank's promissory note form at issue allegedly did not adequately disclose to commercial borrowers that interest on their loans was being accrued pursuant to the common 365/360 method of interest accrual.[1] As a result of this allegedly inadequate disclosure, Plaintiffs claim that the Bank computed interest on its commercial loans at a rate in excess of that stated in its commercial loan documents, thereby violating the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* and the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, and breaching the terms of the promissory notes. The Bank has always denied and continues to deny any wrongdoing or liability on its part and has vigorously contested Plaintiffs' claims, both factually and legally.

Since 2002, the parties have engaged in extensive discovery, with the Bank responding to hundreds of written discovery requests, producing tens of thousands of documents, and producing numerous Bank executives for deposition. The Bank also prepared summaries of the more than 11,000 commercial loans (made to approximately 3,500 different borrowers) on which interest was computed using the 365/360 method during the Class Period. The Bank and

---

[1] Under the 365/360 method, a loan's nominal annual interest rate is divided by 360 days to obtain the daily interest rate, which is then multiplied by the number of days the principal balance is outstanding. This method results in a commercial borrower paying approximately five more days' interest than is typically due in a calendar year under an alternative and equally common interest accrual method, i.e., the 365/365 method.

2

Plaintiffs have also engaged in extensive motion practice, including the briefing of multiple dispositive motions. Finally, the parties engaged in numerous and extensive settlement discussions for well over a year, eventually culminating in the Settlement Agreement presently submitted to this Court for final approval.

The proposed Settlement Class in this case is comprised of the following:

> All persons or entities that had commercial loans outstanding with the Bank of Edwardsville, its predecessors and successors in interest, and all affiliated entities (including, without limitation, The Bank of Edwardsville, Banc Ed Corp., Omni Bank, Inc., and Omni Bank) in the period of June 1, 1998 through March 2, 2008 (the "Class Period"), and paid interest on such loans computed pursuant to the 365/360 basis of interest accrual.
>
> Excluded from the Settlement Class are (1) employees, officers, directors, agents, and legal representatives of the Bank; (2) all persons or entities who previously opted-out of the action; and (3) all Settlement Class members who elect to exclude themselves from the settlement.

The Settlement Agreement provides that each Settlement Class member who does not opt out of the settlement will receive a cash settlement payment based upon the differential in interest between (1) the amount of interest actually paid to the Bank under the 365/360 accrual method, and (2) the slightly lower amount of interest that would have been paid had the Bank used the alternative 365/365 method. The Bank's payments to all Settlement Class members will be paid from a Common Fund consisting of Three Million Four Hundred Fifteen Thousand Dollars ($3,415,000) in cash.[2] Also payable from the Common Fund will be Class Counsel Fees, the Settlement Class Representative's Fee, and approved Litigation Expenses.

---

[2] The Common Fund is comprised of (a) a cash payment by the Bank of $3,215,000, and (b) the Bank's contribution of a $200,000 payment made by separate (and subsequently-dismissed) defendant HFS in settlement of the Bank's third-party claims against HFS.

3

After deducting such fees and expenses, each Settlement Class member will receive a pro rata share of the Common Fund based upon 100% of each class member's interest differential.[3] The settlement would resolve all claims of the Settlement Class members related to or arising from the Bank's use of the 365/360 interest accrual method, and all claims that were or could have been asserted in this case related to the facts alleged in the pending Complaint and the Settlement Agreement.

This Court granted preliminary approval of the parties' proposed settlement by order dated September 18, 2009. (Doc. No. 43). Thereafter, and in accordance with the Preliminary Approval Order, the approved written Notice of the proposed settlement was mailed individually to each member of the Settlement Class. The Notice provided Settlement Class members with detailed information about the settlement and related matters. Among other things, it identified the case, the Court, the proposed Settlement Class, the date scheduled for the Final Fairness Hearing, the claims asserted in the Complaint, the terms of the Settlement Agreement, the opt-out and objection process, and the various avenues through which Settlement Class members could obtain more detailed information about the settlement. *See Aff. of S. Fenwick* (and Exhibit A thereto), attached to this Memorandum as **Exhibit B**.

---

[3] The Bank has prepared spreadsheets summarizing (1) the interest differential attributable to the Bank's use of the 365/360 basis of interest accrual for commercial loans during the period June 1, 1998 through March 2, 2008 (the "Class Loan Summary"), and (2) each Settlement Class member's pro rata share of the settlement funds available after payment of Class Counsel fees, litigation expenses, and the class representative's fee (the "Distribution Spreadsheet"). *See Aff. of D. Hessel*, attached hereto as **Exhibit A**. At the Court's request, these spreadsheets are not being filed because they are each voluminous and contain a great deal of private information relating to Settlement Class members. However, at the scheduled final fairness hearing on January 25, the Bank will have available for review by the Court compact disks of both spreadsheets.

4

Following this comprehensive notice procedure, no objections to the proposed settlement (and only four opt-outs) were received. *See Aff. of S. Fenwick* (Ex. B), at ¶ 14.[4] Because there are no objectors, and the number of opt-outs is truly negligible, they present no impediment to final approval.

### III. THE PROPOSED CLASS ACTION SETTLEMENT SATISFIES THE STANDARDS FOR FINAL APPROVAL

"Federal courts favor settlement ... ." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (citing *Isby v. Bayh*, 75 F.3d 1191, 1198-99 (7th Cir. 1996)); *Mangone v. First USA Bank*, 206 F.R.D. 222, 224 (S.D. Ill. 2001) (same). This policy favoring settlement includes class action settlements, for which approval is required under Rule 23(e). *See* 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41, 87 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). While courts must "exercise the highest degree of vigilance" when evaluating proposed class action settlements, they will approve such settlements where they are "fair, reasonable, and adequate." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Moreover, "[c]ourts are not to substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wisc. 2002).

Importantly, in applying the policy in favor of settlement, courts will attach a presumption of fairness to a proposed settlement where it was (1) negotiated at arms-length, (2) after sufficient investigation and discovery to enable counsel and the court to act intelligently, (3)

---

[4] Long before removal of this case to federal court, and in conjunction with the notice provided to class members as a consequence of the State Court's 2003 class certification order, an additional 38 class members had previously chosen to opt out of this litigation.

5

proposed by counsel experienced in similar litigation, and (4) generally supported by the settlement class as exhibited by a small number of objections. 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, 92-93 (4th ed. 2002); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at n.2 (N.D. Ill. Oct. 10, 1995).

In addition to this presumption, courts in the Seventh Circuit have highlighted several fairness factors to further assist trial courts in determining whether to approve a class action settlement: (1) the strength of plaintiffs' case compared to the amount of defendant's settlement offer; (2) an assessment of the likely complexity, length, and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed at the time of settlement. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1198-99; *Mangone*, 206 F.R.D. at 224. "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653.

A. The Presumption of Fairness Applies in This Case

The presumption of fairness is appropriate here because experienced counsel for both parties reached the Settlement Agreement after extensive discovery, and because the reaction of the Settlement Class further confirms the fairness of the settlement terms.

*First*, the preliminarily-approved Settlement Agreement was vigorously negotiated at arms-length for more than a year. The parties initially negotiated and reached a settlement that was preliminarily approved by the State Court on June 30, 2008. Before they could proceed further, however, separate defendant HFS removed the action to this Court. (Doc. No. 2).

The State Court settlement was initially revised to reflect the change in forum, and the parties presented it to this Court on December 10, 2008. (Doc. No. 25). The Court, however, declined to grant preliminary approval because the initial settlement agreement contained a "reverter" clause, pursuant to which unclaimed settlement monies would revert to the Bank. (Doc. No. 26). Accordingly, the parties resumed negotiations and subsequently reached a new proposed settlement without a reverter provision, which Plaintiffs presented to the Court for preliminary approval on April 17, 2009. (Doc. No. 34).

On June 1, 2009, the Court convened a hearing to consider the parties' proposed new settlement agreement. Due to its concerns regarding the value of (1) the Bank's willingness to forego use of the 365/360 interest accrual method on commercial loans for several years, and (2) the Bank's proposed assignment of its third-party claims against HFS to Plaintiffs, the Court again declined to grant preliminary approval. (Doc. No. 40).

Accordingly, the parties again resumed settlement negotiations. After extensive additional discussions, the parties reached the present revised settlement agreement, which creates a $3,415,000 Common Fund and eliminates the aspects of the former settlement that concerned the Court. It is this third proposed Settlement Agreement that Plaintiffs submitted to the Court on August 12, 2009 (Doc. No. 42), and this Court preliminarily approved in its September 18, 2009 Order. (Doc. No. 43).

*Second*, the history of this litigation in general, and especially the exhaustive investigation and discovery conducted by the parties, has allowed for meaningful analysis of both sides' legal and factual positions. The Bank has responded to hundreds of written discovery requests, produced thousands of documents, and offered numerous witnesses for deposition.

*Third*, counsel for both sides are experienced in similar litigation, and have endorsed the Settlement Agreement as fair, reasonable, and adequate.

*Fourth*, the fairness of the Settlement Agreement is confirmed by the reactions of the Class members. They have not submitted any objections to the proposed settlement, which is notable when one considers that the Settlement Class is comprised of thousands of members. The number of opt-outs—a total of 42, only four of which were submitted after this Court preliminarily approved the proposed settlement—is likewise statistically insignificant.

In sum, when considering the relevant factors, it is appropriate for this Court to begin its review of the parties' Settlement Agreement with a presumption of fairness.

    B.    <u>All of the Relevant Criteria Support Final Approval of the Settlement</u>

            *1.    The Value of the Settlement is Substantial Measured in Relation to the Strength of Plaintiffs' Case*

The proposed settlement provides that each Settlement Class member who does not opt out of the settlement will, without the need to complete any claims process, receive a settlement payment. The Bank's $3,415,000 cash contribution to the Common Fund represents more than 122% of the actual damages alleged by Plaintiffs.[5] Thus, the Settlement Agreement fully compensates Settlement Class members. Further, the Bank has incurred the additional costs of notice and settlement administration, rather than imposing these costs on the Common Fund.

The fairness of these settlement benefits is evident when assessed in the context of each party's litigation position. The Bank has vigorously denied, and continues to deny, Plaintiffs' material allegations and claims, as well as any wrongdoing or liability. It also has raised strong merits and class certification defenses, which it would continue to assert in continued litigation.

---

[5] The monetary difference between the total interest accrued on all Settlement Class loans using the 365/360 accrual method (excluding opt-outs) and the amount of interest that would have accrued on all such loans using the 365/365 accrual method is $2,797,698.61. *See Aff. of D. Hessel* (Ex. A), at ¶ 13.

Among other merits defenses, the Bank has a strong voluntary payment defense. Under the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *King. v. First Capital Fin. Serv. Corp.*, 828 N.E.2d 1155, 1170 (Ill. 2005). The vitality of this longstanding defense—recognized and enforced by Illinois courts in reported cases for more than a century—has been reaffirmed by the Illinois Supreme Court in recent years. *Id.* at 1170-71.[6] Further, prior to removal, the State Court denied Plaintiffs' motion for summary judgment against the voluntary payment defense and concluded that fact issues relating to this important defense could only be resolved by trial on the merits. *See 5/31/06 State Court Order*, attached hereto as **Exhibit C**.

Thus, if the parties' current settlement is not approved, the Bank will present evidence that its commercial loan customers (many of which are sophisticated business entities with their own accountants and attorneys) understood how much interest they were paying on their loans and how such interest was accrued, with the result that the Class claims are barred by the voluntary payment doctrine. The Bank would also demonstrate the absence of a causal link between the claimed inadequate disclosure of the 365/360 interest accrual method and any actual damage allegedly sustained by Settlement Class members.

In addition, Plaintiffs would bear the burden of convincing this Court that the present case satisfies the class certification requirements of Fed.R.Civ.P. 23. Although the State Court granted class certification back in 2003, the facts and the law have developed considerably since that certification order. This is a complex lawsuit involving thousands of commercials loans

---

[6] *See, e.g., Ill. Glass Co. v. Chicago Tel. Co.*, 85 N.E. 200, 201 (1908) ("It has been a universally recognized rule that money paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal.").

made over a period of nearly ten years using varying types of loan documentation. Continuing to litigate this case as a class action would enmesh the Court in hundreds if not thousands of complicated mini-trials, rendering class-wide litigation unmanageable.[7]

Accordingly, the Settlement Agreement provides considerable and certain value to Class members. Continued litigation, by contrast, raises the possibility that these same individuals will recover no relief in the face of the Bank's strong merits and class certification defenses; there is a real risk that Settlement Class members would receive nothing if this action were litigated to conclusion. These considerations strongly favor approving the parties' proposed settlement.

### 2. *Settlement is Preferable to the Length and Expense of Continued Litigation*

The Settlement Agreement's substantial benefits to Settlement Class members must be weighed not only against the possibility of no recovery, but also against the likely additional protracted and costly proceedings if further litigation ensues. *See Great Neck Capital*, 212 F.R.D. at 409. Put another way, the value to the Settlement Class members of recovery under the Settlement Agreement arises not merely from its certainty, but also from its immediacy.

Here, substantial settlement payments will be sent to Settlement Class members shortly following final approval; given the history of this action, further litigation—even if successful— would take several more years. Initially, this Court will need to determine if the serious manageability obstacles to class certification in the event of continued litigation are insurmountable. Whichever party lost that issue in this Court would almost certainly seek to immediately appeal pursuant to Fed. R. Civ. P. 23(f). Further, any trial—whether with respect to

---

[7] Obstacles to class-wide litigation are particularly great with respect to Plaintiffs' Consumer Fraud Claim, about which this Court has itself expressed doubts: "The parties are advised that this Court is skeptical that the consumer fraud claim is appropriate for class-wide treatment but will consider argument on the matter." (Doc. No. 33).

the named Plaintiff only or a certified class—would present numerous factual and legal issues for resolution at trial, as previewed by the State Court's ruling on the voluntary payment doctrine.

Finally, even if Plaintiffs were able to maintain a class action <u>and</u> obtain a favorable judgment on the merits following a vigorously contested trial, they would face considerable challenges in holding that result on appeal. Simply put, final resolution of the action is not only unpredictable, but could easily take several more years. Plaintiffs' claims have already been extensively litigated for more than seven years. Suit was filed back in November 2002 and, since then, the action has been removed to and remanded from a Federal Bankruptcy Court, appealed in Illinois state court, and twice removed to this Court. Several more detours would likely occur before this action could be fully and finally resolved.

In short, the remaining burdens, expenses, and risks to Plaintiff and Class members in the necessary further litigation would be substantial. Consequently, settlement presents an immediate and eminently fair alternative for Settlement Class members. *See, e.g., Isby*, 75 F.3d at 1199-1200; *Great Neck Capital*, 212 F.R.D. at 410 ("Given the prospects for a long and arduous trial and appeal process, settlement at this stage is beneficial to class members.").

    3.    *<u>The Reaction of Settlement Class Members Favors Settlement</u>*

A court-approved Notice of this settlement was mailed directly to each Settlement Class member. The Notice and additional information regarding the proposed settlement were also available from a website dedicated to the proposed settlement, through a dedicated toll-free telephone number, and by repeated invitations to directly contact the Settlement Administrator or Class Counsel. The approved Notice advised each Class member of the terms of the proposed settlement, and the deadlines and procedures for objecting or opting out. *See Aff. of S.Fenwick* (Ex. B), at ¶¶ 8-17.

Despite the widespread dissemination of all this information, the parties and this Court did not receive a single objection to the settlement. *Id.* at ¶ 14. Further, although nearly 3,500 Class Notices were mailed out in accordance with the Court's preliminary approval order, only four class members elected to opt out after receiving the summary of the proposed settlement set forth in the Class Notice. *Id.* at ¶ 13. *See In re Warner Commc'ns Secs. Litig.*, 618 F.Supp. 735, 746 (S.D.N.Y. 1985) (noting small number of objections and opt-outs as support for approving settlement); *Mangone*, 206 F.R.D. at 226-27 ("Settlement was strongly supported by the Class as evidenced by the extremely low percentage of opt outs and objections.").

The primary role of a court in evaluating a class action settlement is to protect the interests of absent class members. *Pigford v. Glickman*, 206 F.3d 1212, 1216-17 (D.C. Cir. 2000) ("The district court's role in reviewing the [consent] decree is to protect the interests of absent class members ... ."). Where, as here, (1) each Class member received individually mailed notice of the settlement and its terms; (2) each Class member was a commercial (not a consumer) borrower, and many were sophisticated business entities; and (3) Class members have overwhelmingly elected to remain in the Settlement Class and accept the benefits of the Settlement Agreement after receiving full information regarding the settlement terms, the result is clear. The Settlement Class members have concluded that the Settlement Agreement is fair, and in their best interests. This Court should affirm their independent judgment, and find that Class members' lack of objections and the extremely small number of opt-outs further supports approval of the settlement.

    4.    *Experienced Counsel Support the Settlement, Which was Extensively Negotiated After Considerable Discovery*

The parties' settlement was reached after lengthy and extensive negotiations, following the Bank's response to hundreds of written discovery requests, production of tens of thousands

of documents, and producing multiple witnesses for deposition. Counsel for both parties, experienced in class action litigation, thus had more than sufficient information with which to negotiate and evaluate the proposed settlement. *See Great Neck Capital*, 212 F.R.D. at 410 (where motion to dismiss had been ruled on and merits discovery was underway, the "state of the proceedings and the amount of discovery completed weigh[ed] in favor of the settlement"). Further, the settlement negotiations themselves, as described above, extended for more than a year as the parties worked through multiple agreements.

In light of the foregoing, the Settlement Agreement is fair, reasonable, and adequate, and all of the fairness factors support this Court's final approval of the proposed settlement.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant The Bank of Edwardsville respectfully requests this Court to give its final approval of the parties' proposed settlement, and to grant such other and further relief as may be appropriate in the circumstances.

Respectfully submitted,

/s/ Michael J. Morris
Gary Mayes #01802801
Michael J. Morris #06195389
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000

*Attorneys for Defendant Bank of Edwardsville*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of January, 2010, a copy of the foregoing was served via the Court's electronic filing system, on the following persons:

Bernard Ysursa
12 West Lincoln Street
Belleville, IL 62220
(618) 235-3500

Pat Ducey
The Law Office of Pat Ducey
41 Oakbrooke
Troy, IL 62294
(618) 514-6998

Thomas Ysursa
5111 West Main Street
Belleville, IL 62226
(618) 235-0020

*Attorneys for Plaintiff*
*Kenneth Kitson and the Settlement Class*

/s/ Michael J. Morris